### THE ALICE.
Misc. No 6.

District Court, Puerto Rico.
July 28, 1948.

Francisco Ponsa Feliu, Acting U. S. Atty., of San Juan, P. R., for the United States.

Vicente M. Ydrach, of San Juan, P. R., for claimants.

CHAVEZ, District Judge.

On June 4, 1948, the United States Collector of Customs for Puerto Rico applied for a warrant of detention of the American Schooner Alice, and as grounds for said application, it is alleged:

That on February 6 and 9, 1948, 246 galvanized pipes with an aggregate total footage of 5,163 feet, were seized by said Collector at San Juan, Puerto Rico, aboard the American Schooner Alice, under the provisions of the Export Control Act of July 2, 1940, 54 Stat. 714, as amended by the Act of June 30, 1942, 56 Stat. 463, 50 U.S.C.A.Appendix, § 701, which were about to be illegally exported to the Dominican Republic without an export license.

That the atttempt was then and there made to export, ship, and take out from the United States (San Juan, Puerto Rico) the aforementioned articles in violation of law, on the said American Schooner Alice.

That the said galvanized pipes were intended for unlawful export by one Pascual Negroni Padilla or by his agents Enrique E. Lespier and Luis F. Lovelace, all residents of this city of San Juan, Puerto Rico, to the Dominican Republic, and that a warrant for detention of the said galvanized pipes was issued by this court on February 14, 1948; and that the owner or claimant of said articles having failed to file a petition for restoration within 30 days after the seizure, on March 24, 1948, libel proceedings were instituted in the United States District Court for Puerto Rico against the property for condemnation and a decree of default, forfeiture and condemnation was entered in that case on May 10, 1948.

That the American Schooner Alice, in accordance with the official records is the property of one Jose P. Negroni of 22 Cristo Street, San Juan, Puerto Rico and that Pascual Negroni Padilla, under whose orders the galvanized pipes placed aboard the American Schooner Alice for the illegal exportation to the Dominican Republic appears in the records as the legal agent of his brother, Jose P. Negroni, the owner of record of said American Schooner Alice.

That the said Pascual Negroni Padilla is and has been for at least the past six years, in full charge and control of the operations of the American Schooner Alice: hires and pays the crew of said vessel; appoints agents for the Schooner Alice at ports in Puerto Rico and issues orders, either by himself or through agents appointed by him for that purpose at both the Dominican Republic and Puerto Rico, to the master of the Schooner Alice in regard to the cargo to be laden aboard same in Puerto Rico and in the Dominican Republic.

The Collector of Customs then alleged that in view of all the circumstances on June 1, 1948, she ordered the seizure of the Schooner Alice, then at the port of Guayanilla, Puerto Rico, under the provisions of 22 U.S.C.A. § 401, and that she knows that the 246 galvanized pipes seized aboard the American Schooner Alice, at the port of San Juan, Puerto Rico, on February 6 and 9, 1948, were to be exported to Ciudad Trujillo, D. R. in the American Schooner Alice in violation of Sec. 6 of the Act of July 2, 1940, as amended, 50 U.S. C.A.Appendix, § 701, and the proclamation of the President of the United States and the Regulations of the Office of International Trade, Department of Commerce and the Collector prays for a warrant to justify the further detention of said American Schooner Alice.

On June 30, 1948, Jose P. Negroni and Pascual Negroni Padilla, hereinafter referred to as claimants, filed a petition for restoration of the Schooner Alice under the provisions of § 403 of Title 22 U.S.C.A. and, as grounds for said petition for restoration allege:

(a) That on June 1, 1948, the U. S. Collector of Customs for Puerto Rico seized the Schooner Alice then in the port of Guayanilla, P. R. and on June 4, 1948, the said Collector filed in the U. S. District Court for Puerto Rico a petition for warrant to justify the further detention;

(b) That the petition filed by the Collector alleges that on February 6 and 9, 1948, said Collector seized aboard the Schooner Alice, certain galvanized pipes which were about to be illegally exported to the Dominican Republic without an export license; that the attempt was then and there made to export, ship and take out from the United States the said articles on the Schooner Alice: that all of said galvanized pipes were intended for unlawful export by Pascual Negroni Padilla; that a warrant for detention of the said galvanized pipes were issued by the U. S. District Court for Puerto Rico on February 14, 1948; that subsequently the said galvanized pipes were condemned and that in view of all said circumstances on June 1, 1948, the Collector of Customs ordered the seizure of the Schooner Alice.

(c) The claimants deny that on February 6 and 9, 1948, or at any other date, the said galvanized pipes were about to be illegally exported to the Dominican Republic or to any other country and they deny that any attempt was then and there made to

export, ship and take out of the United States the aforementioned articles in violation of the law on the Schooner Alice and deny further that the said articles were intended for unlawful export by Pascual Negroni Padilla or any agent.

Claimant further alleges that the seizure of the Schooner Alice on June 1, 1948, was not justified under the statute and that the Petition for a warrant to justify further detention of the Schooner Alice filed on June 4, 1948, fails to state sufficient grounds to justify the issuance of the warrant applied for and that the warrant issued by this court on June 4, 1948 should be set aside and as grounds therefor, alleges:

(1) That no allegation is made to the effect that at the time of the seizure of the Schooner Alice on June 1, 1948, "an attempt was being made to export or ship out of the United States" articles in violation of law or that at the time of the seizure of said schooner "there was known or there was probable cause to believe that such articles were being exported or being intended to be exported or shipped from or taken out of the United States.

(2) Because as appears from the petition filed by the Collector at the time of the seizure of the Schooner Alice no articles were about to be exported or shipped or taken out of the United States in violation of law, since it is clearly alleged that the intention to export in violation of law was present only on February 6 and 9, 1948.

(3) Because as far as the intention of the exporter and the status of the goods is concerned the statute employs only verbs in the present tense, and to be subject to seizure the articles must be "about to be exported."

(4) Because once the galvanized pipes were seized by the Collector on February 6 and 9, 1948, the alleged intention to export the said galvanized pipes in violation of law ceased to exist because it cannot be conceived that said intention continued after the pipes in question were under the control and custody of the U. S. Customs authorities.

(5) Because the statutory authority to divest an owner of his property must be strictly construed and that Congress intended to authorize seizure only when the illegal exporter was caught in the act and that the law does not contemplate that an attempt at illegal export once having been made the goods become tainted and may be validly seized whenever they come within reach of the Customs authorities.

The claimants then pray that the petition for warrant of detention filed by the U. S. Collector of Customs for Puerto Rico on June 4, 1948, be dismissed and that the warrant for detention issued by the Court on the same day be set aside and that the Schooner Alice be restored to petitioners.

Three cases are cited by the parties involved as authority in their respective contentions. The Government relies upon United States v. 21 Pounds & 8 Ounces of Platinum, 4 Cir., 147 F.2d 78 and United States v. Three Cadillac Coupes et al, 5 Cir., 157 F.2d 792. The claimant cites United States v. 200 Watches, D. C., 66 F. Supp. 228.

In United States v. 21 Pounds & 8 Ounces of Platinum, 4 Cir., 147 F.2d 78, the platinum was seized originally by unauthorized persons, that is, agents of the Federal Bureau of Investigation. Later the Collector of Customs seized the platinum under 22 U.S.C.A. § 401. The Court held that the seizure by the Collector constituted the "seizure" within the meaning of the provision requiring forfeiture proceedings to be commenced within 10 days from seizure, and that with respect to "present intent" to export, the status of the goods as of the time of the first seizure remains unchanged.

United States v. Three Cadillac Coupes et al., 5 Cir., 157 F.2d 792, held that the statute must be strictly construed and that when the seizure is originally by an authorized person the 10 days within which application for a warrant of further detention must be made, do not commence to run until the goods are seized by person authorized under the statute.

In United States v. 200 Watches, D. C., 66 F.Supp. 228, the Master and Purser of a vessel sailing from Los Angeles, purchased certain watches and cigar lighters which they took with them without securing a "General United States License." It

744

was their purpose to sell these watches to navy personnel stationed in the Pacific. At her first port of call the ship's orders were changed and she was re-routed to Galveston, Texas, at which port her Master and Purser declared the watches and lighters. The Customs authorities directed that the articles remain on board under seal. The ship proceeded to New York, where the customs authorities seized the watches and lighters and six days later warrants issued for the further detention of the same. The Court ordered restoration of the detained watches and lighters for the reason that at the time of seizure by the Collector of Customs in New York, they were not "about to be exported" within the provision of § 401.

In this case the pipes were seized on February 6, 1948, and February 9, 1948, and immediately thereafter a petition for a warrant of detention was filed. In that petition the Collector did allege that the attempt was then and there made to export, ship, and take out from the United States the aforementioned pipes and that the pipes were intended for unlawful export.

The Collector does not allege that on June 1, 1948, an attempt was being made to export or ship from or take out of the United States any arms or munitions of war or other articles in violation of law. Neither does the Collector allege that on June 1, 1948, the Collector knew or had probable cause to believe that any such arms or munitions of war, or other articles, were being or were intended to be exported, shipped from or taken out of the United States in violation of law. This the Collector is required to allege in order to come within the statute.

The petition of the Collector discloses that the "articles," to wit, the pipes, had been seized by said Collector on February 6 and 9, 1948, warrants of detention issued and the pipes forfeited and condemned to the Government on May 10, 1948. Thereafter, on June 1, 1948, "in view of the circumstances," the Schooner Alice was seized. Therefore, it is impossible for the Collector to allege that on June 1, 1948, the pipes were about to be exported illegally.

The Court holds that the petition of the Collector of Customs for a warrant to justify further detention of the Schooner Alice fails to allege sufficient facts to justify the issuance of the warrant applied for and rules that the warrant issued by this Court on June 4, 1948 should be set aside.

Therefore the petition for a warrant of detention filed by the United States Collector of Customs for Puerto Rico on June 4, 1948, is dismissed and the warrant of detention issued on June 4, 1948, is set aside. The Schooner Alice is ordered restored to the claimants.